UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

CHRISTOPHER KAY HORNE,          )
                                )
    Plaintiff,              )
                                )
v.                              )          No. 7:20-CV-145-REW
                                )
KILOLO KIJAKAZI, Acting Commissioner    )
of Social Security,             )          OPINION & ORDER
                                )
    Defendant.              )

*** *** *** ***

Christopher Kay Horne appeals the denial of his application for Disability Insurance Benefits (DIB). *See* DE 1 (Complaint). The parties filed dueling summary judgment motions. DE 15 (Plaintiff's Motion for Summary Judgment); DE 21 (Defendant's Motion for Summary Judgment). The administrative record appears at DE 12-1 ("R." Administrative Transcript). The Court, having considered the entire record under governing law, **GRANTS** the Commissioner's motion (DE 21), and **DENIES** Horne's motion (DE 15). Substantial evidence supports the findings underpinning the administrative ruling, and the Administrative Law Judge (ALJ) applied proper legal standards in resolving Horne's application.

## I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On March 12, 2019, Horne applied for Disability Insurance Benefits (DIB). *See* R. 178-79. Horne alleged that the following conditions limited his ability to work as of October 5, 2018: "Back problems," "Leg problems," "Knee problems," "Unable to read very well," and "Unable to write very well." *See id.* at 197 (Application). After agency denials, Horne appealed, resulting in

a telephonic hearing before ALJ Maria Hodges (Judge Hodges). *See id.* at 32-53 (Transcript of Hearing). After a hearing and review, Judge Hodges concluded that Horne "has not been under a disability within the meaning of the Social Security Act from October 5, 2018, through the date of this decision." *Id.* at 13 (Notice of Decision – Unfavorable). In her decision, Judge Hodges made the following findings consistent with the codified five-step evaluation sequence. *See id.* at 12-31; *see also* 20 C.F.R.§ 404.1520 (explaining the five-step sequential evaluation process used to determine if a claimant is entitled to DIB).

First, Judge Hodges found that Horne "has not engaged in substantial gainful activity since October 5, 2018, the alleged onset date." *Id.* at 14. At step two, Judge Hodges then found that Horne "has the following severe impairments: osteoarthritis, degenerative disc disease, obesity, angina pectoris, hypertension, borderline intellectual functioning, and depressive disorder." *Id.*; *see also* 20 CFR § 404.1520(c). In reaching this decision, Judge Hodges considered Horne's prior medical records—including treatments, prescriptions, and diagnoses—related to Horne's claimed physical and mental impairments.[1] *Id.* 14-15.

Third, Judge Hodges determined that Horne lacked "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* at 15; *see also* 20 CFR § 404, Subpart P, App. 1; 20 CFR §§ 404.1520(d), 404.1525, 404.1526. Judge Hodges grounded her decision in Horne's medical records as they related to the various, relevant sections of Appendix 1 that would automatically qualify Horne as disabled. *See id.* 15-18; *see also*, 20 C.F.R. § 404 Subpart P, App. 1. Judge

---

[1] Judge Hodges also found that, although Horne complained of headaches, the record did not demonstrate that these would significantly limit his ability to perform basic work activities. *See* R. 15. Judge Hodges therefore found that migraines were a non-severe impairment at step two. *See id.*

2

Hodges found that Horne did not have any physical or mental impairments that medically equaled the severity of impairments in Appendix 1. *See id.* at 15-18.

At step four, Judge Hodges defined Horne's Residual Functional Capacity (RFC) after "careful consideration of the entire record." *Id.* at 18. Judge Hodges considered the full array of Horne's claimed symptoms juxtaposed with objective medical evidence and other evidence in the record, pursuant to 20 C.F.R. § 404.1529 and SSR 16-3p.[2] *See id.* at 18-23. Judge Hodges found that Horne's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," however, she continued, "[Horne's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 19. Notably, Judge Hodges reviewed medical records demonstrating that, despite Horne's documented physical issues, he "reported improvement of his symptoms and he remains stable with his treatment regimen, which allows him to generally perform his activities of daily living." *Id.*; *see also id.* at 844-871 (documenting Horne's progress to alleviate pain and improve his ambulation with Dr. Sai P. Gutti). Also, mentally, Horne had "no more than mild to moderate function limitations" *Id.* at 20. Judge Hodges laced the full spectrum of medical diagnoses and opinions into her analysis. *See id.* at 18-23. She also considered Horne's own testimony. *Id.* at 19.

Judge Hodges then found that Horne lacked past relevant work under 20 C.F.R. § 404.1565. *See id.* at 200. Thus, lacking any metric for comparison, the decision did not analyze any occupational transferability issues. *See id.*

---

[2] SSR 16-3P (S.S.A.), 2017 WL 5180304 (Oct. 25, 2017).

At the fifth step, in reliance on VE testimony from the hearing, Judge Hodges determined that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." *Id.* at 23. Judge Hodges relied partially on the vocational expert's testimony to address how Horne's limitations would impede his ability to perform unskilled, light work. *See id.* at 24. The expert determined that, despite Horne's limitations, he could "perform the requirements of representative light occupations such as  sorter, . . . garment folder, . . . and produce weigher." *Id.*; *see also id.* at 51. Further, the expert testified that Horne could perform sedentary level jobs including "table worker, . . . sorter, . . . and final assembler." *Id.* at 24; *see also id.* at 51. Judge Hodges asked the vocational expert to assess how "the use of a can[e] for ambulation" would alter Horne's potential job fit; the vocational expert testified that no change would result. *See id.* at 24. Judge Hodges therefore determined that a "finding of 'not disabled' is therefore appropriate." *Id.*

Horne petitioned the Appeals Council for review but was denied review on October 28, 2020. *See id.* at 1-4. Horne now turns to federal court, seeking judicial review of Judge Hodges's decision under 42 U.S.C § 405(g). DE 1 (Complaint); DE 15 (Plaintiff's Motion); DE 15-1 (Plaintiff's Memorandum in Support).

## II. ANALYSIS

### A. Standard of Review

The Court has carefully considered Judge Hodges's decision, the transcript of the administrative hearing, and the pertinent administrative record. The Court has turned every apt[3] page, primarily focusing on the portions of the record to which the parties specifically cite.

---

[3] That is, those records relevant to the particular issues Horne presents for review.

Judicial review of an ALJ's decision to deny disability benefits is a limited and deferential inquiry into whether substantial evidence supports the denial's factual decisions and whether the ALJ properly applied relevant legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 91 S. Ct. 1420, 1427 (1971)); *see also* 42 U.S.C. § 405(g) (providing and defining judicial review for Social Security claims) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]").

Substantial evidence means "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). The Court does not try the case *de novo*, resolve conflicts in the evidence, or revisit questions of credibility. *See Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Similarly, the Court does not reverse findings of the Commissioner or Judge Hodges merely because the record contains evidence—even substantial evidence—to support a different conclusion. *Warner*, 375 F.3d at 390. Rather, the Court must affirm the agency decision if substantial evidence supports it, even if the Court might have decided the case differently if standing in Judge Hodges's shoes. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Him v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

Judge Hodges, when assessing disability, conducted the recognized five-step analysis. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R.

§§ 404.1520(a)(4). At Step 1, Judge Hodges considered whether the claimant performs substantial gainful activity. *See Preslar*, 14 F.3d at 1110; 20 C.F.R. § 404.1520(a)(4)(i).[4] At Step 2, Judge Hodges determined impairment severity. *See Preslar*, 14 F.3d at 1110; 20 C.F.R. § 404.1520(a)(4)(ii). At Step 3, Judge Hodges analyzed assigned impairments against the Listing of Impairments. *See Preslar*, 14 F.3d at 1110; 20 C.F.R. § 404.1520(a)(4)(iii). At Step 4, Judge Hodges defined the claimant's residual functional capacity and considered whether the claimant can perform past relevant work. *See Preslar*, 14 F.3d at 1110; 20 C.F.R. § 404.1520(a)(4)(iv). The inquiry at this stage (if applicable) is whether the claimant can still perform that type of work, not necessarily the specific past job. *See Studaway v. Sec'y of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987). Finally, at Step 5, when the evidentiary burden of production shifts to the Commissioner, if the claimant cannot perform past relevant work, Judge Hodges determined whether significant numbers of other jobs exist in the national economy that the claimant can perform, given the applicable RFC. *See Preslar*, 14 F.3d at 1110; 20 C.F.R. § 404.1520(a)(4)(v). A determination contrary to disability at any step ends the inquiry. *Mowery v. Heckler*, 771 F.2d 966, 969 (6th Cir. 1985).

When reviewing Judge Hodges's application of the legal standards, the Court gives deference to her interpretation of the law and reviews the decision for reasonableness and

---

[4] Horne seeks only Disability Insurance Benefits. R. 178. Accordingly, 20 C.F.R. § 404 controls (regulation for Disability Insurance Benefits), not § 416 (Supplemental Security Income). However, the "standard of review for supplemental security income cases mirrors the standard applied in social security disability cases." *Bailey v. Sec'y of Health & Human Servs.*, 922 F.2d 841, No. 90-3265, 1991 WL 310, at *3 (6th Cir. Jan. 3, 1991) (table); *see also Roby v. Comm'r of Soc. Sec.*, No. 12-10615, 2013 WL 451329, at *3 (E.D. Mich. Jan. 14, 2013) ("The standard for disability under both the DIB and SSI programs is virtually identical."), *adopted in* 2013 WL 450934 (E.D. Mich. Feb. 6, 2013). Accordingly, 20 C.F.R. §§ 404 and 416 are largely interchangeable.

consistency with governing statutes. *Whiteside v. Sec'y of Health & Human Servs.*, 834 F.2d 1289, 1292 (6th Cir. 1987). In a Social Security benefits case, the agency's construction of the statute should be followed "unless there are compelling indications that it is wrong." *Merz v. Sec'y of Health & Human Servs.*, 969 F.2d 201, 203 (6th Cir. 1992) (quoting *Whiteside*, 834 F.2d at 1292).

Horne presents three arguments in criticism of the ruling: (1) that the assigned RFC was "vague, confusing, and contradictory," (2) that Judge Hodges did not adequately account for all of Horne's impairments, tainting her reliance on the vocational expert's testimony, and (3) that Judge Hodges erroneously found that Horne could perform light work. DE 15-1 at 1. The Court now addresses, and rejects, each argument.

B.  Save for a harmless scrivener's mistake, Judge Hodges appropriately articulated Horne's RFC.

Horne first argues that Judge Hodges "formulated an RFC that is vague, confusing, and contradictory." *See* DE 15-1 at 1. Horne argues that the verbiage Judge Hodges used is contradictory and lacks clarity, seeking to undermine the RFC by magnifying multiple scrivener's errors. *See id.* at 2-4. In so arguing, Horne challenges application of the legal standards governing RFC formulation but, ultimately, makes a mountain out of a mole hill. The Court, therefore, rejects the first argument.

In formulating the RFC, Judge Hodges lifted descriptive language directly from the Dictionary of Occupational Titles (DOT), Appendix C. *Compare* R. 18 *with* DOT App'x C, 1991 WL 688702. Judge Hodges determined that Horne possessed a GED reasoning level of two, which allowed him to complete "simple, routine, repetitive tasks"—consistent with jobs identified during the vocational expert's testimony. *See* R. 18; SSR 00-4p, 2000 WL 1898704, at *3 (providing a specific vocational preparation of two to unskilled workers); DOT Nos 526.687-010 (Sorter), 1991

WL 674513; 789.87-066 (Garment Folder), 1991 WL 681266; 299.589-010 (Produce Weigher),

1991 WL 672639. The SSA has found that ALJs will, and should, use occupational information—

including the DOT—in making disability determinations at steps four and five in the sequential

evaluation process. *See* SSR 00-4p, 2000 WL 1898704, at *2. This legal standard governed Judge

Hodges's RFC formulation. *Whiteside*, 834 F.2d at 1292 (noting "'[t]he construction of a statute

by those charged with its execution should be followed unless there are compelling indications

that it is wrong'") (quoting *Red Lion Broadcasting Co. v. FCC*, 89 S. Ct. 1794, 1802 (1969)).

Judge Hodges merely borrowed phrasing and verbiage from the DOT, and that language correlates

to the reasoning level of the jobs assessed; the Court cannot find that she erroneously applied

incorrect legal standards in formulating Horne's RFC. The Court has previously adopted this

approach. *See Reynolds v. Kijakazi*, No. 0:20-CV-87-REW (E.D. Ky. Mar. 30, 2022) (DE 18 at

5-7) (holding, in addressing a nearly identical argument, "the ALJ did not err by including [DOT]

terminology in the RFC").

Further, the ALJ's text includes two obvious scrivener's errors. The Court agrees with the

Acting Commissioner that any discrepancy between the hearing transcript and Judge Hodges's

stated determination would be, at most, harmless error. During the hearing, Judge Hodges asked

the vocational expert about Horne's ability to perform "detailed, but uninvolved written or oral

instructions"—the correct verbiage from DOT Appendix C.[5] *Compare* R. 51 *with* DOT App'x C,

1991 WL 688702.[6] Also, during the hearing Judge Hodges asked the vocational expert whether

---

[5] Unlike in *Lancaster*—the case on which Horne relies—Judge Hodges properly instructed the vocational expert at the hearing. *See Lancaster v. Comm'r of Soc. Sec.*, 228 Fed. App'x 563, 573 (6th Cir. 2007).

[6] Judge Hodges's determination incorrectly stated that Horne could obey "detailed but ***not*** uninvolved written or oral instructions." R. 18 (emphasis added).

Horne's "need [for] a cane" would affect the jobs Horne could potentially perform—again, using the correct verbiage capturing Horne's medical limitations. *Compare* R. 52 *with* R. 24. In the written decision, the ALJ erroneously said "detailed but *not* uninvolved" instructions, R. 18 (emphasis added), and at one point spelled "can" in place of the intended "cane." *See* R. 24.

An ALJ's erroneous hypothetical directed at a vocational expert is not grounds for reversal if the vocational expert's response addresses the claimant's actual limitations, not the ALJ's erroneous instruction. *See* R. 52.[7] *Duron v. Comm'r of Soc. Sec.*, No. 1:20-CV-112, 2021 WL 972808 at *8 (W.D. Mich. Mar. 16, 2021) (refusing to reverse an ALJ's determination even though the ALJ improperly and repeatedly asked the vocational expert about "light work" jobs instead of "sedentary jobs" because the vocational expert "identified jobs based on plaintiff's actual limitations" so "the ALJ's error did not affect the outcome of the case"). Further, scrivener's errors similarly do not require remand when "the ALJ's true meaning is easily discernible." *Gomez v. Berryhill*, No. 3:18-CV-11738, 2019 WL 5680841, at *4 (E.D. Mich. June 11, 2019), *report and recommendation adopted sub nom*, *Gomez v. Comm'r of Soc. Sec.*, No. 18-11738, 2019 WL 3491621 (E.D. Mich. Aug. 1, 2019).

Here, the hearing transcript indicates that Judge Hodges correctly instructed the vocational expert on Horne's full range of medical limitations. This generated accurate and responsive vocational expert testimony on which the judge relied. Also, despite the scrivener's errors, the ALJ's meanings are clear in context. Thus, Judge Hodges's RFC determination, though expressed with typographical or syntax mistakes, was untainted. The Court, therefore, refuses to remand

---

[7] Judge Hodges's determination incorrectly stated that one medical record indicated that Horne "required the use of a can for ambulation." R. 24 (emphasis added).

Horne's DIB denial based on scrivener's errors that ultimately did not result in misleading vocational expert testimony or affect the conclusion in the proceedings.

C.  Judge Hodges adequately considered Horne's limitations when formulating Horne's RFC.

Horne next asserts that Judge Hodges did not adequately assess and capture all of Horne's medical impairments in the RFC, precluding reliance on the vocational expert's RFC-dependent testimony. *See* DE 15-1 at 4-9. Specifically, Horne asserts that the RFC did not accurately reflect Horne's migraines, gastrointestinal issues, and lack of balance. *See id.* However, Horne has not at any point claimed a lack of balance and gastrointestinal issues limited his work ability, and Judge Hodges reasonably addressed Horne's migraine treatment in her RFC formulation. Horne's argument, therefore, lacks merit.

In the Sixth Circuit, "case law does not require the ALJ to discuss those capacities for which no limitation is alleged." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002). Here, Horne never asserted that his gastrointestinal issues or any distinct balance deficit contributed to rendering him disabled. *See* R. 197 (listing "all of the physical or mental conditions (including emotional or learning problems) that limit [Horne's] ability to work" as only "Back problems," "Leg problems," "Knee problems," "Unable to read very well," and "Unable to write very well"). Horne referenced neither condition or history at the hearing.[8] *See id.* at 37-50. On this record, Judge Hodges was not required to discuss these medical symptoms in her determination. Instead Judge Hodges properly "discussed the medical and other evidence on the disputed issues and explained the basis for [her] determination of [Horne's] RFC." *Delgado*, 30 F. App'x at 548.

---

[8] Hodge attributed disability to his back pain. *See* R. 39. To the extent that Horne argues that his ambulatory limitations cover lack of balance, Judge Hodges discussed Horne's ambulatory limitations at length throughout her RFC formulation. *See* R. 23-28.

Additionally, the Court must note, the gastrointestinal reference is to *two* temporally unrelated events[9] in this lengthy record, one prior to disability onset. The balance topic appears only in the records of Dr. Rice (R. 884), and Judge Hodges directly dealt with and parried the impact of that doctor's views. *See* R. 22. Further, a rational observer must wonder how, if Horne can *never* maintain balance, he can ambulate or sit to any degree whatsoever.

As to migraines, at the ALJ hearing, Horne testified that migraines sharply limited his ability to function. *See* R. 46. Horne now contends that Judge Hodges never accounted for his migraines when she formulated the RFC. *See* DE 15-1 at 6. Specifically, Horne points to Judge Hodges's statements regarding migraine severity at step two to challenge Judge Hodges's RFC formulation at step four. *See* DE 15-1 at 5-6.

Horne's argument, which mistakenly relies on the ALJ's step two severe-impairment analysis to challenge the step four RFC calculation, is misguided. *See id.*; *see also* R. 14, 20. Judge Hodges did, in fact, consider and account for Horne's migraines. She discussed the particular evidence regarding the condition. *See* R. 20. Moreover, upon considering the evidence, Judge Hodges concluded that Horne's migraines were not significantly limiting and would be treated as a non-severe impairment. *See id*. This conclusion reflected the minimal references to migraines in the medical records. Perhaps the continued prescriptions cut slightly against the conclusion, but the Court notes that Horne mentioned prescriptions in the hearing only when prompted by his wife. R. 47. The ALJ was well aware of the Imitrex prescription (R. 19) and yet saw little indication of a present, limiting effect from the migraines.[10] *See id.* Indeed, although the medical records (e.g.,

---

[9] And the ALJ did reference the April 2020 event, *see* R. 21, but nothing linked that event to inability to work in the period beginning that October.

[10] Horne's subjective complaints were, of course, part of the evidence for Judge Hodges to consider. *See Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989); 20 C.F.R. §§ 404.1520,

R. 751-774; 1915-1929) do report chronic headaches and migraines that are not intractable, along with consistent refills, those records do not discuss any migraine or headache episodes as a catalyst for any particular visit or additional treatment. The condition, it seems, is long-standing and managed by medication. The ALJ saw this and classified the issue defensibly. The non-severe impairment simply did not, in the ALJ's reasoned view, impact the RFC calculus as to Horne. The Court sees the ALJ's conclusions and treatment as supported by substantial evidence. Horne's descriptions of his status at the hearing bordered on the fanciful when compared to the full treatment history.

> D. Judge Hodges reasonably relied on the vocational expert's testimony to find that Horne could perform three "light work" jobs in the national economy.

Horne next contends that Judge Hodges mistakenly found that Horne could perform multiple "light work" jobs. *See* DE 15-1 at 9-10. Horne argues that his four-hour ambulatory limitation would preclude "light work" because "light work" requires "frequent" standing or walking—"frequent" defined as occurring from one-third to two-thirds of the time. *See id.* at 10. However, the vocational expert on whom Judge Hodges relied found multiple "light work" jobs that did not require more than four hours of standing or walking and could still be performed while using a cane; and Judge Hodges is empowered to rely on this testimony. Therefore, the Court rejects Horne's third argument because Judge Hodges properly relied on the vocational expert's testimony to determine whether jobs existed in the national economy that Horne could perform.

At the fifth step in the sequential evaluation process, ALJs must determine if jobs exist in the national economy that the claimant can perform. *See Preslar*, 14 F.3d at 1110; 20 C.F.R.

---

1529. However, such complaints are not, in a vacuum, outcome determinative. *See* SSR 16-3P(2)(a). They are part of a holistic review, considered alongside other factors, including the objective medical evidence and other evidence and opinions in the record. *See id.*

§ 404.1520(a)(4)(v). ALJs may rely on evidence from a vocational expert at this stage, to address complex issues specific to the claimant's ability to work. *See* 20 C.F.R. § 404.1566(e). ALJs may consider, for example, vocational experts' testimony "about a particular job's requirements," based on their "experience in job placement or career counseling." SSR 00-4p, 2000 WL 1898704, a *2. ALJs may rely on this testimony so long as the expert is credible and the hypothetical question posed to the expert accurately reflects the claimant's physical and mental limitations. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004) ("[T]he Commissioner may rely on the testimony of a vocational expert to find that the claimant possesses the capacity to perform other substantial gainful activity that exists in the national economy."); *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

Here, Judge Hodges properly used the vocational expert's testimony in considering whether Horne could find suitable work in the national economy despite his specific physical limitations. Judge Hodges asked the vocational expert if Horne could work in the national economy despite a list of record-based impairments—including "stand[ing] and walk[ing] four hours total of an eight-hour day" and his need for a cane. *See* R. 51-52.[11] The vocational expert confirmed

---

[11] Specifically, Judge Hodges asked:

> If you took an individual of the same age at 48 to 50, education and lack of work experience, limited to light level work who could stand and walk four hours total of an eight-hour day, 30 minutes at a time. Who could occasionally climb ramps and stairs—sorry I'm editing while I go. Never climb ladders, ropes, or scaffolds. Occasionally stoop, kneel, crouch, and crawl. Limited to simple, routine, repetitive tasks and by that I mean can apply common sense understanding, carry out detail, but uninvolved written or oral instructions and deal with problems involving a few concrete variable in or from standardized situations with no fast paced or production quota work. Given that, would there be jobs?

R. 51.

that, despite these limitations, Horne could perform at least three unskilled, light jobs: sorter, garment folder, and produce weigher. *See id.* at 51. The vocational expert clarified that, although the DOT does not address "a stand, a walk option," based on her education and experience, she believed that Horne could perform these occupations.[12] *See id.* at 53; *see also* No. 526.687-010, 1991 WL 674513; DOT No. 789.687-066, 1991 WL 681266; DOT No. 299.587-010, 1991 WL 672639. Thus, the vocational expert's testimony responded to the pertinent medical limitations that impacted Horne—including his walking and standing limitations. Even if Horne could not perform the "full range of light work" entailing six hours of walking or standing, Horne could work in three other "light work" occupations that, per VE testimony, mapped onto his abilities. *See id.*; *see also* SSR 83-10, 1983 WL 31251, at *6 (describing the standing and walking requirements for occupations involving the *full range* of light work); 20 CFR § 404.1567(b) (referencing light work as involving "a good deal of walking or standing"). This provided Judge Hodges substantial evidence to find that Horne could perform work in the national economy and was, therefore, not disabled under § 404.1505. *See also* 20 C.F.R. § 404.1520. Judge Hodges's rational and supported determination, therefore, must stand.[13]

### III.    CONCLUSION

For the stated reasons, the Court **GRANTS** DE 21 and **DENIES** DE 15. The Court will enter a separate Judgment.

---

[12] The vocational expert further identified three jobs at the sedentary exertional level that Horne could perform: table worker, sorter, and final assembler. *See* R. 51.

[13] The Court sees no incongruity on this point between the ALJ's view here and that of the state consultants. Each of them (and Horne cites to Drs. White and Matar) rated Horne at the 4-hour stand/walk limit, which is what the ALJ employed. R. 61-64; 74-78; 18.

This the 26th day of April, 2022.

Signed By:

_Robert E. Wier_   REW

**United States District Judge**